IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

KENNETH ODOM,
      Plaintiff,

vs.                           Case No. 3:09cv570/MCR/CJK

FLORIDA DEPARTMENT OF CORRECTIONS,
      Defendant.

_____

## REPORT AND RECOMMENDATION

Plaintiff, proceeding *pro se* and *in forma pauperis*, has filed a third amended civil rights complaint under 42 U.S.C. § 1983. (Doc. 35). Upon review of the amended complaint, the court concludes that plaintiff has not presented an actionable claim, and that dismissal of this case is warranted.

### BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is an inmate of the Florida Department of Corrections ("FDOC") currently confined at Everglades Correctional Institution. He was confined at Santa Rosa Correctional Institution ("Santa Rosa CI") at the time of the events giving rise to this lawsuit. Plaintiff's third amended complaint names eight defendants, all FDOC employees: Martie Taylor, ADA Statewide Coordinator for the FDOC; Pilar Tourney, Impaired Inmate Statewide Coordinator for the FDOC; J.J. Taylor, a Health Services Administrator at Santa Rosa CI; W.D. Rummel, a medical doctor at Santa Rosa CI; M. Nichols, an Advanced Registered Nurse Practitioner at Santa Rosa CI; John Doe, a Correctional Officer at Santa Rosa CI; Lieutenant Swartz, now assigned to North Florida Reception Center but formerly assigned to Santa Rosa CI; and

Jennifer Haas, Assistant Warden of Programs at Santa Rosa CI. (Doc. 35, pp. 1-2). The defendants are sued in their individual and official capacities. (*Id.*, p. 1).

Plaintiff claims the defendants discriminated against him in violation of the ADA, deprived him of his property in violation of the Due Process Clause, and subjected him to cruel and unusual punishment in violation of the Eighth Amendment, when they permanently deprived him of his "medical[ly] necessary therapeutic Magnum boots" and temporarily deprived him of his walking cane for 6 months during his confinement in Close Management segregation at Santa Rosa CI. As a result of defendants' conduct, plaintiff states he suffered the following: (1) permanent loss of his therapeutic Magnum boots, (2) muscular weakness, (3) muscle atrophy, (4) increased foot drop, and (5) exclusion from outdoor exercise, a job assignment, out-of-cell programs, and services while in Close Management. (Doc. 35, pp 19-21, ¶¶ 96-97, 100-101). Plaintiff further claims defendant John Doe subjected him to cruel and unusual punishment in violation of the Eighth Amendment when he confiscated plaintiff's boots and walking cane upon plaintiff's arrival at Santa Rosa CI Close Management, knowing that plaintiff had medical authorization to possess them. (*Id.*, pp. 20-21 ¶¶ 98-99). Plaintiff claims defendant Swartz violated the First Amendment when he retaliated against plaintiff for filing grievances, by moving plaintiff from his handicap cell into a regular cell, threatening plaintiff, and causing the destruction of plaintiff's personal photographs. (*Id.*, p. 22 ¶¶ 102-04). As relief for these alleged constitutional and ADA violations, plaintiff seeks declaratory and injunctive relief, compensatory damages, punitive damages, and any other relief the court deems just and proper. (*Id.*, pp. 22-24).

Upon review of plaintiff's third amended complaint and attachments, the

essential facts are these.

<u>Historical Facts Relating to Plaintiff's Therapeutic Boots</u>

Plaintiff suffers from, among other things, right hemi paresis (muscle weakness on the right side of his body) and right foot drop which causes plaintiff to walk with a pronounced limp.  (Doc. 35, p. 17 ¶ 79 and Ex. C-1).[1]  In November of 1996, an AFO brace was fabricated for plaintiff and it was recommended that he be fitted with a work boot "that will accommodate AFO.  Boot needs to be soft to protect from skin breakdown."  (Ex. C-4).  In December of 1996, medical staff at Sumter CI ordered plaintiff a pair of Northlake high-top work boots size 10½ EE.  (Ex. C-6).  On September 12, 2005, plaintiff was issued another pair of boots – a pair of Spot-Bilt boots, size 10½ 4E.  (Ex. C-8).  In April of 2006, during plaintiff's incarceration at Washington CI, plaintiff's Northlake boots were allegedly confiscated during a shakedown.  When the boots could not be found in plaintiff's property, (exs. C-9 through C-12), they were replaced on July 7, 2006, by Dr. McClunney, a podiatrist at the Reception and Medical Center Brace Clinic, who issued plaintiff a pair of Spot-Bilt Midtown boots, size 10.5, width 2E.  (Ex. C-13).  On September 19, 2006, staff at Washington CI made a consultation request to the Brace Clinic, noting that the boots were lost and plaintiff needed a replacement.  (Ex. C-14).  On March 16, 2007, RMC issued plaintiff black Magnum 3-D therapeutic boots, size 10½ width D.  (Doc. 35, p. 13 ¶ 53 and Ex. C-21).  The boots were confiscated by Washington CI security staff on March 21, 2007, because they looked too similar to correctional officers' boots.  (Doc. 35, p. 13 ¶ 54 and Ex. C-22 through C-25).  The security captain

---

[1]All references to exhibits will be to those attached to plaintiff's third amended complaint, Doc. 35.

contacted Dr. McClunney and it was determined that the wrong boots had been sent, that the confiscated boots would be returned to the Brace Clinic, and that the proper boots would be mailed to Washington CI for issuance to plaintiff.  (Ex. C-28).  On May 29, 2007, plaintiff was issued a pair of tan colored therapeutic Magnum 7903 boots, size 10½.  (Id., ¶ 55 and Ex. C-29 and C-30).  That day, Amy Street, the Senior Health Services Administrator at Washington CI, made a notation in plaintiff's medical chart that plaintiff's leg brace was unable to fit into the new boots.  She further noted that plaintiff was "not satisfied with new boots due to no lift available and brace not fitting in boots."  (*Id*.).  Ms. Street forwarded plaintiff's chart to the Chief Health Officer at Washington CI for evaluation of the need for follow-up to RMC Brace Clinic.  (*Id*.).  CHO Dr. Ciungu noted in plaintiff's medical chart that plaintiff was "not happy with the design - 'Does not fit my foot.'"  (Ex. C-29).  Dr. Ciungu submitted a consultation request to the Brace Clinic, noting that plaintiff was "not happy with the way the AFO [brace] and Magnum boots fit and demands new measurement and new design to fit his needs."  (Ex. C-32).  On June 15, 2007, plaintiff met with Dr. McClunney at the Brace Clinic.  Dr. McClunney asked plaintiff about the chart notation indicating plaintiff was not happy with his boots.  (Doc. 35, p. 13 ¶ 56).  Plaintiff reminded the doctor that they had previously discussed the Spot-Bilt Midtown boot, and that Dr. McClunney had said he would order them.  On June 15, 2007, Dr. McClunney issued the following recommendation:  "Will need Spot Bilt Midtown boots size <u>10½ E.  Please order and mail to inmate at Washington CI</u>." (Ex. C-33) (emphasis in original).  Thereafter, plaintiff was transferred to Santa Rosa CI.  On November 19, 2007, in response to a letter plaintiff sent to the Inspector General, the DOC Regional Executive Medical Director Frank Johnson informed

plaintiff that his boots should be arriving at Santa Rosa CI sometime that week.  (Exs. B-16 and B-17).  On November 22, 2007, plaintiff received a pair of Dr. Comfort 303-8 work boots size 10½ 4E.  (Doc. 35, p. 18 ¶ 88, Ex. B-18).  Plaintiff complains that they are "of lower quality," and not what Dr. McClunney prescribed.  (Doc. 35, p. 18 ¶¶ 88-89).

Facts Relating to Plaintiff's Present Claims Concerning Shoes and Walking Cane

Plaintiff arrived at Santa Rosa CI on July 17, 2007, and was received into Close Management.  At that time, plaintiff apparently still had the tan Magnum boots, as well as a medical pass authorizing use of a cane.  (Doc. 35, p. 8 ¶ 24 and Ex. B-1). The boots and cane were confiscated by defendant Officer John Doe during an intake property inventory, for the stated reason that plaintiff could not have the boots while in Close Management, and would not need his cane because he would be confined to his cell.  (*Id.*, pp. 8-9 ¶¶ 24-29).  Doe indicated on the property list that the boots would be mailed.  (Ex. B-1).  On July 29, 2007, plaintiff sent an Inmate Request to the Health Services Administrator asking if medical could take possession of his boots instead of mailing them home, because mailing them home would "further impair my chronic foot drop."  (*Id.*, p. 9 ¶ 30 and Ex. B-2).  Defendant Advanced Registered Nurse Practitioner ("ARNP") Nichols responded on July 30, 2007, stating: "I have reviewed your chart and you stated those boots did not work with your brace and another pair was requested for you.  Those boots will be taken by medical – not mailed home."  (*Id.*).  On August 1, 2007 plaintiff sent another inmate request advising that the boots were "replacement compensation" for the "wrongful destruction" of his Northlake boots, and that the boots act as a soft splint so that plaintiff does not become totally dependent on his hard brace.  (Doc. 35, p. 10 ¶ 32).

On August 7, 2007, defendant Nichols met with plaintiff concerning renewal of his passes.  She noted that plaintiff had right-sided paralysis.  She further noted that plaintiff stated he wanted his Magnum boots back and reported he was supposed to wear the boots without the brace.  Defendant Nichols advised plaintiff that that was incorrect and that he was to wear the AFO brace with a boot wide enough to support the brace.  Plaintiff also requested a handicap cell.  (Ex. A-26).  Defendant Nichols observed that plaintiff was wearing flip flops and dragging his right foot, but that he was steady on his feet.  (*Id*.).  She issued passes for low bunk, low tier right foot brace, no work with plaintiff's right hand, and size 10½ EE boots.  (Ex. A-26 and Ex. B-7, copies of passes).  Plaintiff informed defendant Nichols that the Magnum boots were provided to him as compensation for the wrongful destruction of his Northlake boots, and that he had been approved for a walking cane and handicap cell pursuant to an ADA reasonable accommodation request made in August of 2005 while confined at Jackson CI.  (Ex. B-21).  That did not change defendant Nichols' recommendation.

On August 10, 2007, Santa Rosa CI RN Specialist Keith Gardner conducted an Impaired Inmate Evaluation of plaintiff.  (Doc. 35, p. 11 ¶ 37 and Ex. A-25).  Mr. Gardner noted that plaintiff presented with complaints that his boots were taken from him at Washington CI, he needed a handicap cell, and he had been issued a cane. (*Id*.).  Mr. Gardner observed:  (1) plaintiff's gait was steady with a noticeable limp on his right side, (2) plaintiff dropped his right foot and (3) plaintiff had moderate difficulty sitting in a chair but was able to manage.  Plaintiff completed an Independent Living Assessment in which he reported difficulty transferring to the toilet.  (*Id*.).  Other than that, plaintiff "function[ed] independently with activities of

daily living." (*Id.*).  Plaintiff reported that he had had an inmate assistant on the open compound but was able to function adequately on his own now that he was in his own cell in Close Management.   Mr. Gardner concluded that plaintiff had been given passes appropriate for his condition; except that an additional request would be made to the dorm sergeant to move plaintiff to a handicap cell so that it would be easier for him to transfer to the toilet.  Gardner "[e]ncouraged inmate to take every opportunity to use recreation time to maintain muscle tone." (Doc. 35, p. 11 ¶¶ 38-39 and Ex. A-25).  Plaintiff was immediately moved to a handicap cell.  (Doc. 35, p. 11 ¶ 39).

On September 10, 2007, September 23, 2007, and October 7, 2007 plaintiff submitted sick-call requests seeking the return of his Magnum boots or a written justification for their confiscation. (Doc. 35, ¶¶ 44-49; Exs. B-4, B-6, B07).  Plaintiff asserts he told the nurse during his September 10, 2007 visit that he was "suffering increased muscular weakness and increased foot drop due to being deprived outdoor exercise." (Doc. 35, p. 12 ¶ 45).  The nurse responded that it was defendant ARNP Nichols' decision whether plaintiff would get his boots back.  (*Id.*, ¶ 46).

On September 23, 2007, plaintiff submitted a Reasonable Modification or Accommodation Request form (Form DC2-530)to the Santa Rosa CI ADA Intake Officer (defendant Haas), requesting the return of his Magnum boots and walking cane. (Doc. 35, p. 7 ¶ 15 and Ex. A-1).  On October 8, 2007, defendant Haas denied the request.  (Doc. 35, p. 7 ¶¶ 16-18 and Ex. A-2).  In her "Discussion of Findings" she noted that "Inmate Odom does have a history of foot drop, this is a condition where a brace or special boots are indicated.  Per Health Record review by J.J. Taylor, Senior Health Service Administrator."  (Ex. A-2).   Nonetheless, defendant Haas denied plaintiff's request for the boots and cane, explaining:

> Inmate Kenneth Odom, 892850 was evaluated for boots by the ARNP on 08/07/07. He was also evaluated by the CHO on 08/10/07. The Clinicians' decision was that he has an AFO leg brace and the brace should be worn with regular boots wide enough to support the brace. Therefore, a special boot is not needed at this time.

(Ex. A-2). On October 23, 2007, Statewide ADA Coordinator defendant Martie Taylor issued the following decision on plaintiff's Request for Accommodation:

> This is in response to the above referenced inmate's request for accommodation under the Americans with Disabilities Act (ADA). The inmate is requesting that he be given back his therapeutic boots.

> According to the medical department the inmate was evaluated for special boots by the ARNP on 8/7/07 and by the CHO on 8/10/07. Their decision was that he did not need special boots but boots wide enough to support his brace would suffice. I see that the order for him to receive size 10½ EE boots has already been put in his medical notes.

> I concur with your decision to deny this inmate's request and you may notify him of my decision by a copy of this memo.

(Ex. A-3).

On October 31, 2007, plaintiff wrote defendant Martie Taylor, complaining about the denial of his Reasonable Accommodation request. (Doc. 35, p. 17 ¶ 82). Defendant Taylor responded on November 8, 2007, stating:

> I am referring your letter to Ms. Pilar Tournay, Impaired Inmate Coordinator. She is responsible for dealing with medical problems. I do not have the expertise to determine if you need special boots or not as I have no medical training. Nor can I deal with your body lice.

> I have been attempting to respond to your DC2-530, even though the form is not supposed to be used to request medical devises or passes. Since it seems that you have more extensive issues it would be better if I referred your case to Ms. Tournay.

(Ex. A-14).

On October 7, 2007, plaintiff submitted a formal grievance to the warden at Santa Rosa CI, asserting that he was claiming medical staff violated his rights under the ADA and the Eighth Amendment by not returning his Magnum boots.  (Doc. 35, p. 14 ¶ 63 and Ex. A-15).   The grievance was assigned log #0710-119-127.   On October 23, 2007, defendant Dr. Rummel denied the formal grievance, stating:

> In your request for administrative remedy or appeal, you indicated that you would like to have your Magnum boots returned to you.
>
> Ms. Haas asked me to respond on her behalf.  This is not an ADA claim, this is a medical issue.  A review of available records documents the following information to be true and accurate.  On 05/29/07 Dr. Ciungu (WASCI) noted in your medical record ,that you were not happy with the fit of your Magnum boots.  Dr. C. sent you back to the Brace Clinic.  On 06/15/07 you were seen by Brace Clinic (RMC) and the type of boot was changed.  You were not required to have Magnum boots. On 08/07/07 you were seen by the ARNP (SARCI).  She determined in order for your AFO brace to fit correctly, you needed a wider boot to support the AFO brace.  She ordered a 10A½ EE boot to be obtained from the laundry.  Your health record confirms her decision.  According to your health records you are no longer required to wear Magnum boots.
>
> In light of the above information, your formal grievance is denied.

(Doc. 35, pp. 14-15 ¶¶ 65, 55 and Ex. A-17).  On October 25, 2007, plaintiff appealed to the Office of the Secretary.  (Ex. A-20).  The appeal was assigned log # 07-6-28323.  It was denied on November 28, 2007, as follows:

> Your request for administrative remedy was received at this office and it was carefully evaluated.  Records available to this office were also reviewed.

In addition, the institution was contacted and they provided this office with information regarding the issues you presented.

It is determined that the response made to you by Dr. Rummel on 10/23/07 appropriately addresses the issues you presented.

Should you experience problems, sick call is available so that you may present your concerns to your health care staff.

(Ex. A-23).

On October 20, 2007, plaintiff filed an Inmate Request to defendant Haas chronicling the history of his therapeutic boots being confiscated or lost.  (Doc. 35, p. 14 ¶ 64 and Ex. B-9).  On October 31, 2007, Ms. Haas' Administrative Assistant responded to the request, stating:

Ms. Haas asked me to respond on her behalf:

On 8/7/07 you were seen by ARNP Nichols.  She gave you a low-bunk, low-tier R foot brace, no work w/R hand, 10½ EE1 boot, no [illegible] x 1 yr passes.  You do not need a cane while housed in CM. You were also notified to contact laundry about your boots on 9/11/07 by Nurse McArthur.  If you are still having a medical issue sign up for sick call to be evaluated.

(Doc. 35, p. 17 ¶ 80 and Ex. A-9).

On October 19, 2007, plaintiff submitted a formal grievance to the warden of Santa Rosa CI, claiming that the Chief Health Officer, defendant JJ. Taylor, and defendant ARNP Nichols submitted false information to Assistant Warden Haas which resulted in the denial of his Special Accommodation Request under the ADA. (Doc. 35, p. 8 ¶ 20 and Ex. A-4).  Plaintiff claimed his rights under the ADA and Eighth Amendment had been violated.  (Ex. A-4).  The grievance was assigned log # 0710-119-332.  On October 30, 2007, defendant Dr. Rummel denied the formal

grievance, explaining:

> In your request for administrative remedy or appeal, you indicated that you would like to have your Magnum boots returned to you and have written your grievance as a legal document.  You also charged the Health Services staff members with fraud or falsifying records.
>
> This is a grievance reply, not a legal reply.  A review of available records documents the following information to be true and accurate. The 05/29/07 entry in your medical record indicates you were not happy with the fit of your Magnum boots.  You were sent back to RMC/Brace Clinic.  The 06/15/07 entry indicates you were seen at RMC and the type of boot was changed.  The 08/07/07 entry at SARCI ordered, from the laundry, a wider boot size 10A½ EE to support the AFO brace. Furthermore, it is up to the clinician at the facility you are housed to change or alter recommendations of the specialist to fit the facilities needs.  There is no fraud or falsifying state documentation by the Health Services staff.
>
> In light of the above information your formal grievance is denied.

(Doc. 35, p. 16 ¶ 77 and Ex. A-9).  On November 8, 2007, plaintiff appealed to the Office of the Secretary.  (Doc. 35, p. 17 ¶ 83 and Ex. A-10).  The appeal was assigned log # 07-6-29617 and denied on December 31, 2007, with the following explanation:

> Your request for administrative remedy was received at this office and it was carefully evaluated.  Records available to this officer were also reviewed.
>
> In addition, the institution was contacted and they provided this office with information regarding the issues you presented.
>
> Please be advised that you can not use the grievance process for monetary gain.
>
> It is determined that the response made to you by Dr. Rummel on October 30, 2007 appropriately addresses the issues you presented.

> Special passes are ordered by your Chief Health Officer only when there is a medical need.

(Doc. 35, p. 19 ¶ 91 and Ex. A-13).

On October 23, 2007, plaintiff submitted a formal grievance to the warden asserting that his rights under the ADA were violated when his Special Accommodation Request for Magnum boots was denied and his boots confiscated and replaced with boots from the laundry. (Ex. B-13). Plaintiff complained that the taking of his Magnum boots deprived him of the ability to participate in outdoor exercise, and that the deprivation of a walking cane caused his disability to "degress." (*Id*.). The grievance was assigned log #0710-119-477. (*Id*.). On October 31, 2007, plaintiff submitted a formal grievance to the warden stating he was supplementing formal grievance log #0710-119-477 by asking that the fixed wing video footage for his dormitory be preserved as evidence of "no usage of walking cane, or adequate therapeutic footwear which has denied Grievant meaningful access to outdoor exercise since July 27, 2007 until present." (Doc. 35, p. 17 ¶ 82 and Ex. A-18). The formal grievance was construed as a new grievance and assigned log #0711-119-005. (*Id*.).

On November 27, 2007, defendant Dr. Rummel returned formal grievance log #0710-119-477 without action, stating:

> In your request for administrative remedy or appeal, your issues are being addressed as a claim under the Americans with Disability [sic] Act.

> The grievance forms and procedures are not to be used for ADA claims.

> In light of the above information your formal grievance is

returned without action.

(Ex. B-15).  On November 27, 2007, defendant Dr. Rummel denied formal grievance

log #0711-119-005, explaining:

> In your request for administrative remedy or appeal, you indicated
> that you would like to have your Magnum boots returned to you.
>
> A review of available records documents the following
> information to be true and accurate.  On 05/29/07 Dr. Ciungu (WASCI)
> noted in your medical record, that you were not happy with the fit of
> your Magnum boots.  Dr. C. sent you back to the Brace Clinic.  On
> 06/15/07 you were seen by Brace Clinic (RMC) and the type of boot was
> changed.  You were not required to have Magnum boots.  On 08/07/07
> you were seen by the ARNP (SARCI).  She determined in order for your
> AFO brace to fit correctly, you needed a wider boot to support the AFO
> brace.  She ordered a 10A½ EE boot to be obtained from the laundry.
> Your health record confirms her decision.  According to your health
> records you are no longer required to wear Magnum boots.
>
> In light of the above information, your formal grievance is denied.

(Ex. A-19).  Plaintiff apparently did not appeal the denial of these grievances.

On January 13, 2008, plaintiff submitted an Inmate Request for a walking cane

upon his release from Close Management.  (Doc. 35, p. 19 ¶ 92 and Ex. B-20).

Defendant ARNP Nichols denied the request on January 14, 2008, stating, "No, when

you get to your new camp the decision will be made regarding a cane.  I see no

reasons for you to have one."  (*Id*.).

Plaintiff was released from Close Management on January 28, 2008, and

transferred to Mayo CI.  (Doc. 35, p. 19 ¶ 93).  On April 10, 2008, defendant Martie

Taylor notified plaintiff by letter of the following:  "Central Office Security has made

the decision that special boots and canes will not be allowed in Close Management

since they are considered a security risk.  It appears that since you have been assigned to Mayo C.I. your boots and cane have been returned to you." (*Id*., p. 19 ¶ 94 and Ex. A-24).

Facts Relating to Plaintiff's Claim of Retaliation

Plaintiff claims that "[d]ue to filing of grievances Plaintiff was victimized to vindictive and malicious reprisal by prison officials." (Doc. 35, p. 15 ¶ 68).  In support of this claim, plaintiff alleges that on the afternoon of October 24, 2007, an unnamed correctional officer who plaintiff believes to be ARNP Nichols' boyfriend, stared at plaintiff in an intimidating way.  (*Id*., ¶ 69).  The next day, on October 25, 2007, defendant Lieutenant Swartz told plaintiff he was being moved from his handicap cell.  (*Id.*, p. 15 ¶ 70).  Upon arriving at plaintiff's new cell, defendant Schwarz allegedly threatened plaintiff by stating, "You know what time it is.  I'm going to burn your ass up tomorrow.  Strip you and loaf you and give you a disciplinary report." (*Id*., p. 16 ¶ 73).  Swartz then ordered one Officer Ellis to take plaintiff's property and "find something that means something to plaintiff." (*Id*. ¶ 74).  Officer Ellis took 44 personal photographs of plaintiff's family and children, advising plaintiff that they would be destroyed.  (*Id*. ¶ 75).  The Inspector General's Office apparently interviewed plaintiff concerning Swartz's alleged threat.  (*Id.*,  p. 18 ¶ 85 and Ex. B-16).  On November 15, 2007, plaintiff wrote a letter to defendant Tournay complaining of the alleged retaliatory removal of plaintiff from a handicap cell.  (*Id*., p. 18 ¶ 87 and Ex. B-19).  On December 10, 2007, defendant Tournay responded, stating: "This office is in receipt of your letter of 11/15/07 in which you express concern about retaliation.  Please be advised that this office handles only medical concerns.  The issues you present to this office can best be addressed if

presented to the inspector general's office at your institution."  (Ex. B-19).

## DISCUSSION

Because plaintiff is proceeding *in forma pauperis*, the court may dismiss the case if satisfied that the action is "(i) frivolous or malicious;  (ii) fails to state a claim on which relief may be granted;  or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  The court must read plaintiff's *pro se* allegations in a liberal fashion.  *Haines v. Kerner*, 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972).  Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6).  *Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997).  In determining whether the complaint states a claim upon which relief may be granted, the court accepts all factual allegations in the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff.  *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994).  The complaint may be dismissed if the facts as pleaded do not state a claim to relief that is plausible on its face.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1968-69, 1974, 167 L. Ed. 2d 929 (2007) (retiring the negatively-glossed "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim).  A complaint is also subject to dismissal under Rule 12(b)(6) when its allegations – on their face – show that an affirmative defense bars recovery on the claim.  *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001); *see also Jones v. Bock*,  549 U.S. 199, 215, 127 S. Ct. 910, 920-21, 166 L. Ed. 2d 798 (2007) (reiterating that principle and providing,

as an example, that if a complaint's allegations show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim).

Taking the allegations of plaintiff's third amended complaint as true and construing them in the light most favorable to plaintiff, they fail to state a plausible claim under § 1983 or the ADA against any defendant.

ADA Claims

Plaintiff maintains that the defendants' confiscation of his Magnum boots and walking cane violated the ADA.  To state a claim under Title II of the ADA, plaintiff must show:  (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in, or denied the benefits of, the FDOC's services, programs, or activities, or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of his disability.  42 U.S.C. § 12132.  Plaintiff's third amended complaint and attachments fail to show plaintiff was discriminated against on account of his disability.   In fact, the attachments to the amended complaint show that the defendants accommodated plaintiff's disability by providing boots wide enough to fit his brace until properly-sized boots from the RMC Brace Clinic arrived.  Although plaintiff preferred the Magnum boots, he offers no facts from which a reasonable inference could be drawn that defendants' substitution was unreasonable or kept him from participating in a program, service or activity he  otherwise could have done had he been allowed to keep the Magnum boots.  The same is true concerning defendants' denial of a walking cane. The attachments to plaintiff's third amended complaint show that plaintiff was able to walk with a steady gait without a walking cane, and that he functioned

adequately with activities of daily living.  Plaintiff complains he did not get enough outdoor exercise and was deprived of a job assignment, but he fails to provide specific facts attributing that to defendants' denial of a walking cane.  As plaintiff's third amended complaint fails to state a plausible claim for relief under the ADA against any individual defendant, plaintiff's individual capacity claims should be dismissed.  This conclusion further precludes plaintiff from recovering on his official capacity claims premised upon plaintiff's theory that an ADA violation arose from a custom or policy of the FDOC.  Thus, plaintiff's official capacity claims should also be dismissed.  *See Garczynski v. Bradshaw*, 573 F.3d 1158, 1170 (11th Cir. 2009) (holding that if no constitutional violation has occurred, the court need not consider whether the municipality's training of its employees violated plaintiffs' constitutional rights); *Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996) ("[A]n inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred."); *see also, e.g., Manseau v. City of Miramar*, 395 Fed. Appx. 692, 646 (11th Cir. 2010) ("Plaintiffs stated no denial of a constitutional right. The absence of a constitutional violation by the individual Defendants makes it unnecessary for us to consider whether the City was subject to municipal liability for failure to train its employees or because of a custom or policy.); *Troyanos v. Coats*, 372 Fed. Appx. 932, 936 (11th Cir. 2010) (concluding that because the complaint failed to state a claim of deliberate indifference by jail officials, the complaint also failed to allege that the sheriff was deliberately indifferent because he did not properly train, supervise, or discipline his staff; "We are not required to inquire about [the sheriff's] customs or policies for treating mentally ill inmates because the complaint failed to state a claim that jail officials violated Troyanos's constitutional

rights.").

Due Process Claim

To the extent plaintiff suggests the defendants' taking of the Magnum boots constituted a deprivation of property without procedural due process, (*see* Doc. 35, p. 20 ¶ 96), plaintiff's allegations fail to state a viable claim under the Fourteenth Amendment. Even assuming for purposes of argument that the Magnum boots were plaintiff's personal property (as opposed to FDOC property), it is well settled that a prisoner's claim for deprivation of his property does not amount to a violation of due process under the United States Constitution provided that the following two circumstances are present: (1) the deprivation of property resulted from an intentional, non-negligent act of a state employee that is random and unauthorized, rather than pursuant to an established state procedure; and (2) the state provides an adequate post-deprivation remedy for the prisoner's property loss. *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984); *Parratt v. Taylor*, 451 U.S. 527, 543-44, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981). The reasoning behind this principle is that if an employee's action is unauthorized, the state cannot predict when it will occur and thus is unable to provide a pre-deprivation due process hearing. Here, plaintiff does not claim that the taking of his Magnum boots in 2007 was pursuant to officially authorized procedure.[2] Therefore, his claim can only be construed as alleging an intentional, random, and unauthorized act. Additionally, the State of Florida provides adequate post-deprivation remedies whereby plaintiff may

_____

[2]Although plaintiff attaches a letter from defendant Martie Taylor dated April 10, 2008, advising plaintiff that "Central Office Security has made the decision that special boots and canes will not be allowed in Close Management since they are considered a security risk," (Doc. 35, p. 19 ¶ 94, Ex. A-24), that policy came after the Santa Rosa CI defendants confiscated the Magnum boots and walking cane in 2007.

sue the defendants in state court and recover any damages due him for the loss of "his" boots. *See* Fla. Stat. § 768.28. As plaintiff's third amended complaint fails to state a plausible due process claim, plaintiff's Fourteenth Amendment claim should be dismissed.

Eighth Amendment Claims

Plaintiff claims defendant Officer John Doe was deliberately indifferent to his medical needs when Doe confiscated plaintiff's Magnum boots and walking cane during intake, knowing that plaintiff had valid medical passes authorizing the items. (Doc. 35, p. 20 ¶ 98). Plaintiff claims defendants J.J. Taylor, ARNP Nichols and Dr. Rummel exhibited deliberate indifference when they "knowingly and intentionally utiliz[ed] fraud" to deprive plaintiff of his Magnum boots and walking cane. (*Id.*, p. 21¶ 100). As a result, plaintiff asserts he suffered muscle atrophy, increased foot drop, and was deprived of outdoor exercise and a job assignment. (*Id.*, ¶ ¶ 99, 101).

To prevail on an Eighth Amendment deprivation of medical care claim, a prisoner must prove three elements. The first element requires showing, "an objectively serious medical need," so grave that, "if left unattended, poses a substantial risk of serious harm." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (internal quotation marks, alterations and citations omitted). "[A] serious medical need is . . . one . . . diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal quotation marks omitted).

The second element requires "a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish." *Taylor*, 221

F.3d at 1258.  "To show the required subjective intent to punish, a plaintiff must demonstrate that the public official acted with an attitude of 'deliberate indifference.'" *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 105, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976)).  Deliberate indifference is not established "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 1979, 128 L. Ed. 2d 56 (1994).  "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842, 114 S. Ct. at 1983.  Disregard of the risk is also a question of fact that can be shown by standard methods.  *Id.* at 846, 114 S. Ct. at 1983.

Obviously, a complete denial of readily available treatment for a known serious medical condition violates the Constitution.  *Harris v. Coweta Cnty.*, 21 F.3d 388, 393 (11th Cir. 1994).  Also, medical treatment can be so slight as to amount to no treatment at all.  Therefore, the mere fact that treatment was provided does not end the inquiry.  *See Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989) ("[G]rossly incompetent medical care or choice of an easier but less efficacious course of treatment can constitute deliberate indifference."); *see also Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) ("Medical treatment that is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness violates the eighth amendment.").  In order to prevail, however, the prisoner must prove that the officials' response was so inadequate as to

"constitute an unnecessary and wanton infliction of pain" and was not "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor*, at 1258.  Plaintiff must show that the challenged conduct was "very unreasonable in light of a known risk" of harm or suffering. *Hardin v. Hayes*, 52 F.3d 934, 939 (11th Cir. 1995) (citing *Farmer*, 114 S. Ct. at 1978-79). Disputes regarding the level of treatment or the existence of other treatment options do not alone evidence cruel and unusual punishment. *Estelle*, 429 U.S. at 107, 97 S. Ct. at 292; *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985).  Where the inmate has received medical attention, and the dispute is over the adequacy of that attention, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made.   *Harris v. Thigpen*, 941 F.2d 1495, 1507 (11th Cir. 1991) (quoting *Waldrop v. Evans*, 871 F.2d at 1035); *see also Woody v. Cronic*, 401 Fed. Appx. 509, 512 (11th Cir. 2010) (unpublished opinion) ("Generally, an inmate who receives a medical diagnosis and care, but desires a different diagnosis or treatment, cannot show deliberate indifference.").  A difference of opinion over matters of medical judgment does not give rise to a constitutional claim. *Harris*, 941 F.2d at 1505; *Waldrop* at 1033; *Murrell v. Bennett*, 615 F.2d 306, 310 n. 4 (5th Cir. 1980).

For the final element of an Eighth Amendment claim the prisoner must show causation.  In particular, a plaintiff must show the officials' deliberate indifference caused the injury complained of. *Taylor*, at 1258; *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009) (reiterating the elements of an Eighth Amendment claim).

Here, plaintiff's allegations, viewed together with the attachments to his third

amended complaint, fail to establish a plausible claim that any defendant acted with an attitude of deliberate indifference.  Plaintiff believes that his informing defendant Officer Doe of the previously-issued medical passes for the boots and cane establish that Doe knew confiscating the items exposed plaintiff to a substantial risk of serious harm.  But it is obvious that Doe was able to observe plaintiff who, according to his own medical records, was steady on his feet without the boots and cane.  Doe was also aware that plaintiff would be confined to a cell, and that his need for special boots and a cane would be re-assessed by Santa Rosa CI medical staff.  At most, plaintiff's complaint might support an inference that Doe was negligent, but not he was deliberately indifferent.

As to defendants J.J. Taylor, ARNP Nichols and Dr. Rummel, plaintiff has not shown that these defendants "utilized fraud" to deprive plaintiff of his Magnum boots and walking cane, because the attachments to plaintiff's third amended complaint show that the defendants accurately reported the information in plaintiff's medical records.  To the extent plaintiff seeks to impose liability for their decision not to return the Magnum boots, plaintiff cannot establish an Eighth Amendment violation, because the attachments to the complaint establish that the defendants:  (1) knew plaintiff needed a boot wide enough to accommodate his brace, (2) knew that the Magnum boots were not the correct size, and (3) responded reasonably by replacing the Magnum boots with temporary boots wide enough to fit plaintiff's brace.  Plaintiff has not shown that their care was "grossly incompetent" or so inadequate as to "constitute an unnecessary and wanton infliction of pain."

Similarly, plaintiff cannot establish that defendant Taylor, Nichols or Rummel knew he or she was exposing plaintiff to a substantial risk of serious harm by denying

plaintiff a walking cane for the 6-month period he was in Close Management segregation.  The third amended complaint and attachments show that plaintiff was primarily confined to his cell during that period, and had a steady gait without use of a cane.

Thus, accepting all well-pleaded factual allegations of the third amended complaint as true and considering them together with the complaint's attachments, plaintiff fails to state a plausible Eighth Amendment claim against defendants Doe, J.J. Taylor, ARNP Nichols or Dr. Rummel.  Plaintiff's individual capacity claims against the defendants must, therefore, be dismissed, as well as the official capacity claims.

Retaliation Claim

Plaintiff claims defendant Swartz retaliated against him for filing grievances by removing plaintiff from the handicap cell, instructing Officer Hall to destroy plaintiff's photographs, and threatening plaintiff with the statement, "You know what time it is.  I'm going to burn your ass up tomorrow.  Strip you and loaf you and give you a disciplinary report." (Doc. 35, p. 16 ¶¶ 73, 74).  "The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech."  *Farrow v. West*, 320 at 1248.  In the prison context, First Amendment retaliation claims are analyzed under the three-part test set forth in *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008).  To prevail on a retaliation claim, the inmate must establish: "(1) his speech was constitutionally protected; (2) he suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action . . . and the protected speech."  *Id.* at 1276.

Mere "general attacks" upon a defendant's motivations are not enough – the plaintiff must articulate "affirmative evidence" of retaliation to prove the requisite motive. *Crawford-El v. Britton*, 523 U.S. 574, 600, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998) (citations omitted)

Here, plaintiff's retaliation claim fails on the element of causation.  The only facts plaintiff offers to support his claim that Swartz's conduct was motivated by plaintiff's grievances are:  (1) that the conduct occurred after plaintiff filed grievances, and (2) that defendant Nichols' boyfriend was a correctional officer. Even accepting these facts as true and considering them in light of the chronology of events outlined in plaintiff's complaint, they fail to raise plaintiff's conclusion of a retaliatory motive above the speculative level.  *See Ashcroft v. Iqbal*, 556 U.S. —, 129 S. Ct. 1937, 1951, 173 L. Ed. 2d 868 (2009) (explaining that conclusory allegations are not entitled to a presumption of truth).   Therefore, plaintiff's retaliation claim against defendant Swart should be dismissed.

## CONCLUSION

Accepting all well-pleaded factual allegations of plaintiff's third amended complaint as true and construing the complaint and attachments in the light most favorable to plaintiff, plaintiff fails to state a plausible claim under the ADA, the Fourteenth Amendment, the Eighth Amendment, or the First Amendment. Therefore, this case should be dismissed.

Accordingly, it is respectfully RECOMMENDED:

1.  That this case be DISMISSED WITH PREJUDICE under 28 U.S.C. § 1915(e)(2)(B)(ii), for plaintiff's failure to state a claim upon which relief may be granted.

2.  That the clerk be directed to close the file.

At Pensacola, Florida this 17th day of October, 2011.

*/s/ Charles J. Kahn, Jr.*
CHARLES J. KAHN, JR.
UNITED STATES MAGISTRATE JUDGE


## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *Se*e 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).