UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

KENNETH ODOM,

      Plaintiff,

v.                                  Case No: 3:09cv570/MCR/CJK

FLORIDA DEPARTMENT OF
CORRECTIONS, et al.,

      Defendants.
_____/

ORDER and
REPORT AND RECOMMENDATION

      This case filed under 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, is before the court upon defendants' motion for summary judgment (doc. 106) and evidentiary materials (doc. 108). Plaintiff has not responded to the motion.[1] The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). Having fully considered the pleadings, arguments, applicable law and

---

[1] On February 14, 2014, the court invited plaintiff to respond to the motion for summary judgment and advised the parties that defendants' motion and plaintiff's response (if any) would be taken under advisement on March 17, 2014. (Doc. 109). Plaintiff sought (doc. 110) and was granted (doc. 111) a 20-day extension in which to respond to defendants' motion. Over 90 days beyond plaintiff's new deadline have passed, and plaintiff has neither responded to the motion nor sought an additional extension.

evidence of record, the undersigned recommends that defendant's motion for summary judgment be granted.

BACKGROUND AND PROCEDURAL HISTORY

Background

The events giving rise to plaintiff's fifth amended complaint occurred from July 2007 through January 2008 at Santa Rosa Correctional Institution ("Santa Rosa CI").  (Doc. 61).  Plaintiff sues the DOC under the ADA for the denial of participation in the outdoor exercise program for inmates held in close management confinement and raises questions regarding the reasonableness of the accommodation provided.  In addition, plaintiff sues Captain "Swartz" (hereinafter "Schwarz")[2] and Sergeant Ellis in their individual capacities under 42 U.S.C. § 1983, for their alleged retaliation against plaintiff for filing grievances, in violation of the First Amendment.  As relief, plaintiff seeks injunctive relief, compensatory and punitive damages, costs, and any other relief the court deems just and proper.  (Doc. 61).

Procedural History

Plaintiff initiated this action on December 24, 2009, while in the custody of the Florida Department of Corrections ("DOC") confined at Hamilton Correctional Institution.  (Doc. 1).  On December 16, 2010, plaintiff filed a third amended complaint naming eight defendants (Martie Taylohr, Pilar Tourney, J.J. Taylor, W.D. Rummel, M. Nichols, John Doe, Captain Schwarz and Jennifer Haas), each sued in his or her individual and official capacities.  (Doc. 35, pp. 1-2).  The complaint asserted three claims/counts.  Count I asserted a claim of disability discrimination

---

[2] Plaintiff's fifth amended complaint identifies this defendant as Captain "Swartz." Defendants have clarified that this defendant's name is Captain John Schwarz.

under the ADA against all defendants. (*Id*., pp. 19-20). Count II asserted a claim of medical deliberate indifference under the Eighth Amendment against defendants Doe, J.J. Taylor, Rummel and Nichols. (*Id*., pp. 20-21). Count III asserted a claim of retaliation under the First Amendment and the ADA against defendant Schwarz. (*Id*., pp. 21-22). On October 27, 2011, the undersigned recommended that the complaint be dismissed prior to service for failure to state a claim upon which relief may be granted. (Doc. 40). On July 7, 2012, the District Judge adopted in part and rejected in part the recommendation. (Doc. 51). The District Judge's order provided as follows:

> a. The Recommendation is reversed as to Count I insofar as the plaintiff states a claim of disability discrimination in violation of the Americans with Disabilities Act ("ADA") against the Department of Corrections for the denial of participation in the outdoor exercise program for inmates held in close management confinement and raises questions regarding the reasonableness of the accommodation provided.

> b. The Recommendation is reversed as to the retaliation claim set forth in Count III.

> c. In all other respects, the Recommendation is adopted and incorporated herein by reference.

> 2. Thus, Count II and any claims against individual officers in Count I are DISMISSED WITH PREJUDICE under 28 U.S.C. § 1915(e)(2)(B)(ii) for the plaintiff's failure to state a claim upon which relief may be granted.

(Doc. 51, p. 3). The District Judge remanded the case to the undersigned for further proceedings.

On July 10, 2012, the undersigned issued an order directing plaintiff to file an amended complaint limiting his claims to those that survived dismissal. (Doc. 52).

The July 10, 2012 order specified the claims (and defendants) upon which plaintiff was allowed to proceed, and admonished plaintiff that his amended complaint "should be limited to the claims subject to the [District Judge's] remand." (Doc. 52, p. 2). In response, plaintiff filed a fourth amended complaint, but declined to comply withe the July 10, 2012 order.[3] The court disapproved plaintiff's fourth amended complaint and gave plaintiff another opportunity to comply with the court's order. (Doc. 60).

On November 29, 2013, plaintiff filed a fifth amended complaint, setting out the claims now before the court. (Doc. 61). Although plaintiff's fifth amended complaint continues to name all eight of the original defendants (including five against whom all claims had been dismissed), the court accepted the complaint with the provision that plaintiff's naming of Martie Taylor, Peter Tourney, J.J. Taylor, W.D. Rummel and M. Nichols as defendants would be disregarded and only three defendants would be served (the Florida Department of Corrections, Captain Schwarz and Correctional Officer Ellis). (Doc. 62, p. 2). Defendants DOC, Schwarz and Ellis were served and filed an answer. (Doc. 88). During the discovery period, plaintiff was released from incarceration. (*See* Doc. 99, p. 2 ¶ 4). Defendants now move for summary judgment on the following bases:

> (1)  Plaintiff lacks a case or controversy to seek the injunctive relief requested in the Fifth Amended Complaint.

---

[3]Plaintiff's proposed fourth amended complaint was not on the court form, continued to name as defendants (and assert claims against) several individual officers who had been dismissed and were no longer the subject of Count I (the ADA claim against the DOC) or Count III (the retaliation claim against defendants Captain Schwarz and Officer Ellis), and contained essentially the same factual allegations as the third amended complaint. (Doc. 59).

(2)   Plaintiff cannot show an adequate physical injury to overcome the bar on compensatory and punitive damages under 42 U.S.C. § 1997e(e).

(3)   The alleged adverse actions of the DOC did not *actually* violate plaintiff's constitutional rights; therefore, plaintiff cannot seek damages against the DOC for its alleged violation of the ADA, because Title II of the ADA only abrogates the State's sovereign immunity for state actions that *actually* violate a plaintiff's constitutional rights.

(4)   Plaintiff cannot show the defendants' alleged actions violated Title II of the ADA, because:

   a.   Plaintiff was not denied access to outdoor exercise on the basis of his disability; rather, plaintiff independently refused outdoor exercise when offered.

   b.   Defendant Crews evaluated plaintiff for and offered plaintiff reasonable accommodations so he could enjoy the benefits of the programs and services offered by the DOC.

   c.   Plaintiff's insistence on a single accommodation was unreasonable and contradicts medical evaluation.

(5)   Plaintiff failed to exhaust his administrative remedies regarding defendants' alleged retaliation on October 25, 2007.

(6)   Plaintiff cannot show the defendants' alleged retaliatory actions on October 25, 2007, were in response to plaintiff's filing medical grievances, because:

   a.   Plaintiff cannot show the defendants knew of his constitutionally-protected actions (filing medical grievances) when they allegedly took adverse action against him.

   b.   Plaintiff's placement in a handicap cell was contrary to medical policy of the DOC.

(Doc. 106).

On February 14, 2014, the court ordered plaintiff to respond to the summary judgment motion on or before March 17, 2014, and warned plaintiff that failure to do so may result in the motion being granted and final judgment being entered in favor of the defendants without a trial.  (Doc. 109).  Plaintiff has not responded to defendant's motion.

DISCUSSION

Summary Judgment Standard

A motion for summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of proof to set forth the basis for its motion, identifying facts as to which there is no genuine dispute.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  The failure of the nonmoving party to create a factual dispute does not itself authorize the entry of summary judgment; the moving party must establish the absence of a material dispute of fact.  *See Dixie Stevedores, Inc. v. Marinic Maritime, Ltd.*, 778 F.2d 670, 673 (11th Cir. 1985). When, however, the nonmoving party fails to properly address the moving party's assertion of a fact, the court may consider the fact undisputed and may grant summary judgment if the motion and supporting materials show that the moving party is entitled to it.  Fed. R. Civ. P. 56(e)(2), (3); *see also* N.D. Fla. Loc. R. 56.1(A) (stating that facts set forth in the moving party's statement of undisputed material facts will be deemed admitted unless controverted by the opposing party).

Allegations of Plaintiff's Fifth Amended Complaint

The allegations of plaintiff's fifth amended complaint are summarized here for the limited purpose of providing context to the "Undisputed Material Facts" set forth below.  The allegations of plaintiff's fifth amended complaint cannot be considered for purposes of determining whether a genuine dispute of material fact exists, because plaintiff's fifth amended complaint is neither sworn, verified, nor subscribed as true under penalty of perjury.  (*See* Doc. 61, p. 23).  *Compare Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980) ("Although pro se litigants are not held to the same standards of compliance with formal or technical pleading rules applied to attorneys, we have never allowed such litigants to oppose summary judgments by the use of unsworn materials."),[4] *and Piper v. United States*, 392 F.2d 462, 464 (5th Cir. 1968) (holding that denials in unverified pleading were insufficient to controvert affidavit offered in support of motion for summary judgment); *with Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986) (holding that specific facts pled in a *sworn* complaint and repeated in a separate affidavit must be considered in opposition to summary judgment); *see also* 28 U.S.C. § 1746 (providing an alternative to making a sworn statement, but requiring that the statement include a handwritten subscription, signed and dated, that the statement is true under penalty of perjury).  Plaintiff has filed no response whatsoever to defendants' motion for summary judgment or statement of undisputed material facts.

Plaintiff's allegations relating to his ADA claim are these.  Plaintiff alleges that when he arrived at Santa Rosa CI, his medically-prescribed walking cane and

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1098) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

therapeutic Magnum boots were confiscated.  (Doc. 61).  Plaintiff was evaluated by Marsha Nichols, an Advanced Registered Nurse Practitioner ("ARNP").  Plaintiff alleges that ARNP Nichols' prescription, which was not the return of his Magnum boots[5] and cane but rather a replacement pair of boots and no cane, was inadequate medically and, because of the inadequacy of the replacement boots and lack of cane, he was unable to participate in outdoor exercise from August 2007 through January 2008.  Plaintiff submitted a reasonable accommodation request form (DC2-530) requesting the return of the Magnum boots and walking cane.  The form was denied based on a review of plaintiff's medical records.  Plaintiff claims that this alleged denial of an ADA accommodation (the Magnum boots and walking cane) resulted in his not receiving the benefits of a state program based on his disability, and caused him to suffer deterioration in his condition (right-sided semi-paralysis) and worsening symptoms.  (Doc. 61).

Plaintiff also claims defendants Schwarz and Ellis retaliated against him in violation of the First Amendment when they moved him from a "handicap cell" to a standard cell on October 25, 2007, and took (and/or destroyed) some of plaintiff's photographs in reprisal for his filing grievances concerning the Magnum boots and cane.

Undisputed Material Facts

The facts set forth in defendants' statement of undisputed material facts (doc. 106, pp. 6-9) have not been disputed, and will therefore be deemed admitted and incorporated by reference herein.  *See* Fed. R. Civ. P. 56(e); N.D. Fla. Loc. R. 56.1(A)

---

5Magnum boots are described by the manufacturer as, "Sold in 80 countries around the world. The first choice for Law Enforcement, Ambulance, Fire and Security Professionals. Lightweight Athletic comfort, yet built like a battleship!" *http://us.magnumboots.com/history.html*.

("The party opposing a motion for summary judgment shall, in addition to other papers or matters permitted by the rules, file and serve a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried. . . . All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be filed and served by the opposing party."). Additionally, the court finds that these undisputed facts are sufficiently supported by defendants' evidentiary materials. (Doc. 108, Exs. A-I). The undisputed material facts are these.[6]

Plaintiff is no longer in the custody of the DOC, having fully completed his sentence on October 30, 2013. (Doc. 99, p. 2 ¶4; Doc. 102). Plaintiff presently resides in Mobile, Alabama. (Doc. 102; Doc. 110, p. 3).

On July 27, 2007, while in the custody of the DOC, plaintiff was transferred from Northwest Florida Reception Center, formerly known as Washington CI, to Santa Rosa CI. (Doc. 108, Ex. A, Agerton Decl. at Ex. 2). Prior to being transferred, plaintiff had been issued a pair of Magnum boots, style 7903, size 10.5 from Dr. McClunney (a consultant in the Brace Clinic at the Reception and Medical Center) for plaintiff's right foot drop. (Doc. 108, Ex. B, Do Decl. at Comp. Ex. 1, pp. 28-29). Plaintiff was referred back to Dr. McClunney on May 25, 2007, at the request of the Chief Health Officer at Washington CI, because plaintiff was "not happy with the way the AFO and Magnum boots fit and demands new measurements and new design to fit his needs." (*Id*. at p. 44). The AFO is plaintiff's leg brace. As a result, Dr. McClunney changed plaintiff's prescription on June 15, 2007, from Magnum boots

---

[6]Each factual statement contained in this Report and Recommendation is drawn from defendant's Statement of Facts (doc. 106) and supporting evidence (doc. 108), but cites only the evidentiary material (doc. 108).

to Spot Bilt Midtown boots size 10.5 E, and ordered this pair for plaintiff.  (*Id.*, p. 45). Prior to receiving the new pair of boots, plaintiff was transferred on July 27, 2007, to Santa Rosa CI to be placed into close management.  (Doc. 108, Ex. A at Ex. 2). According to the declaration of Albert Agerton, the Assistant Bureau Chief for Security Operations, close management facilities have more stringent security requirements than less-restrictive facilities.  (Doc. 108, Ex. A, Agerton Decl. ¶ 4).  As a result of these more stringent security requirements, items, even health care appliances, allowed at a prior facility may be disallowed upon placement in close management supervision.  (*Id.*).

Upon arrival at Santa Rosa CI, plaintiff went through inmate intake where his personal property was inventoried.  (Doc. 108, Ex. F).  At this inventory, an unknown correctional officer confiscated plaintiff's walking cane and Magnum boots and marked the boots to be mailed home.  (*Id.*).  The confiscation of plaintiff's boots and cane was a result of the more stringent security requirements while in close management, and the DOC policy that allows a clinician at the facility where an inmate is housed to change or alter recommendations of a specialist to fit the facility's needs.  (Doc. 108, Ex. A, Agerton Decl. ¶ 4).

Also upon plaintiff's arrival at Santa Rosa CI, plaintiff's medical records were reviewed by a clinician, who instructed the ARNP at Santa Rosa CI to "address passes."  (Doc. 108, Ex. A, Agerton Decl. at Ex. 4; *see also* Doc. 108, Ex. B, Do Decl. at Comp. Ex. 1, p. 82).  Medical passes include such items as therapeutic boots and a walking cane.  (Doc. 108, Ex. A, Agerton Decl. ¶ 5).

ARNP Nichols addressed plaintiff's passes on August 7, 2007.  (Doc. 108, Ex. A, Agerton Decl. at Ex. 5; *see also* Doc. 108, Ex. B, Do Decl. at Comp. Ex. 1, pp. 76,

86).   During Nichols' visit with plaintiff, Nichols observed and listened to plaintiff concerning his boots and cane.  (Doc. 108, Ex. A, Agerton Decl. at Ex. 5).  Plaintiff requested his Magnum boots back, not to wear with the AFO brace but to wear without the brace, and informed Nichols that he was supposed to wear the boots without the brace.  (*Id*.).  ARNP Nichols advised plaintiff that he was incorrect and that he was to wear the AFO brace with a boot wide enough to support the brace. (*Id*.).  Plaintiff also requested a handicap cell.  (*Id*.).  ARNP Nichols observed that plaintiff was wearing flip flops and dragging his right foot, but was steady on his feet. (*Id*.).  ARNP Nichols issued plaintiff passes for a low bunk, low tier, right foot brace, no work with plaintiff's right hand, no prolonged standing, and size 10½ EE boots to accommodate his brace.  (*Id*.).  ARNP Nichols did not issue plaintiff a pass for a walking cane.  (*Id*.).

On August 10, 2007, RN Specialist Keith Gardner conducted an Impaired Inmate Evaluation of plaintiff at Santa Rosa CI.  (Doc. 108, Ex. B, Do Decl. at Comp. Ex. 1, p. 87).  Plaintiff informed Gardner that his boots were taken from him at Washington CI and that he needed a handicap cell and a cane.  (*Id*.).  Gardner observed:  (1) plaintiff's gait was steady with a noticeable limp on his right side, (2) plaintiff dropped his right foot and (3) plaintiff had moderate difficulty sitting in a chair but was able to manage.  (*Id*. at p. 87).  Plaintiff completed an Independent Living Assessment in which he reported difficulty transferring to the toilet.  (*Id*.). Plaintiff also reported that he had had an inmate assistant on the open compound but was able to function adequately on his own now that he was in his own cell.  (*Id*.). Gardner concluded that plaintiff "function[ed] independently with activities of daily living," and that he had been given passes appropriate for his condition.  (*Id*., p. 87).

Based on Gardner's observation and interview, Gardner "asked the dorm Sgt. to move [plaintiff] into a handicap cell so that he would have an easier time getting [up and down] from toilet." (*Id*., p. 87). Gardner "[e]ncouraged inmate to take every opportunity to use recreation time to maintain muscle tone." (*Id*., p. 87). Plaintiff was moved to a handicap cell. (Doc. 108, Ex. A, Agerton Decl. at Ex. 2).

In September and October of 2007, plaintiff requested the return of his Magnum boots and was told he could obtain the boots issued by ARNP Nichols by contacting the laundry department. (Doc. 108, Ex. B, Do Decl. at Comp. Ex. 1, pp. 88, 98). During a sick call visit on September 24, 2007, plaintiff inquired about the therapeutic boots Dr. McClunney had ordered. (*Id*., p. 97). Medical staff noted that the boots ordered on June 15, 2007, had not been received. (*Id*.). On November 22, 2007, plaintiff received therapeutic boots (Dr. Comfort, size 10½ 4E), with a notation on the receipt that the boots were issued by Dr. McClunney. (*Id*., p. 95). Plaintiff received the Dr. Comfort boots from the medical department, put them on, walked around the medical sally port, stated that the boots fit well, and voiced no complaints. (Doc. 108, Ex. B, Do Decl. at Comp. Ex. 1, p. 101).

Plaintiff's Daily Record of Segregation forms for July 2007 through January 2008 (DC6-229A forms) show that plaintiff was offered, but refused participate in, outdoor exercise. (Doc. 108, Ex. G). The DC6-229 forms track the status of each inmate on close management and document everyday occurrences such as meals, dayroom time, work assignment and outdoor exercise periods. (Doc. 108, Ex. E, Ellis Decl. ¶ 4 ;*see also* Doc. 108, Ex. I, pp. 13-14 (outlining what must be documented on the DC6-229 form, including exercise periods)). One of the responsibilities of correctional officers on close management duty is to fill out the DC6-229 forms.

(*Id*.).  As a correctional officer gives an inmate certain things, or completes certain requirements (e.g., providing a shower and shave), the officer notes that action on the DC6-229 form and initials the notation.  (*Id*).  If an inmate refuses exercise or food, it is documented on the DC6-229 form.  (*Id*.).  Plaintiff refused exercise both before and after he received the therapeutic boots on November 22, 2007.  (Doc. 108, Ex. G).

Defendants have submitted a sworn declaration from Dr. Long Ngoc Do, MD who has been licensed to practice Medicine and Surgery in the State of Florida since 1986.  (Doc. 108, Ex. B, Do Decl.).  Dr. Do has been employed with the DOC from 1987 to the present, and currently serves as Director of Medical Services of the DOC. (Doc. 108, Ex. B, Do Decl. ¶ 1).  Dr. Do reviewed plaintiff's medical records in connection with plaintiff's ADA accommodation claim regarding his cane and therapeutic boots and the alleged retaliatory move from a handicap cell in October of 2007.  (*Id*. ¶ 2).  Dr. Do states his medical opinion that:  (1) plaintiff did not qualify under the DOC's guidelines for a handicap cell and, therefore, his removal therefrom was not of medical consequence; (2) although plaintiff was in need of therapeutic boots that fit his brace, and possibly a cane, there is nothing to indicate that the pair of boots ARNP Nichols authorized, or that those received by plaintiff on November 22, 2007, were inadequate medically; (3) plaintiff's needs for special shoes and orthotics were handled appropriately from a medical standpoint; and (4) plaintiff did not incur any worsening, exacerbation, or deterioration of any of his medical conditions during the times relevant to his complaint.  (*Id*. ¶ 6).  Moreover, the undisputed evidence in the summary judgment record demonstrates that plaintiff did

not suffer any physical injury or any increased pain, muscle atrophy, or foot drop, during the time period at issue (July 2007 through January 2008). (Doc. 108, Ex. B).

Plaintiff was moved from a handicap cell to a standard cell on October 25, 2007. (Doc. 108, Ex. A, Agerton Decl. at Ex. 2). Defendant Schwarz declares under oath that at the time he ordered plaintiff to be moved from a handicap cell to a regular cell, he had no knowledge of grievances plaintiff had filed concerning his therapeutic boots and walking cane. (Doc. 108, Ex. D, Schwarz Decl. ¶ 3). Defendant Schwarz further states that he did not verbally threaten plaintiff, did not retaliate against him in any way, and did not instruct anyone to retaliate against plaintiff. (*Id*. ¶ 2). Defendant Ellis declares under oath that in 2007 he had no knowledge of the grievances plaintiff had filed; that he became aware of the grievances only recently after reviewing the allegations of plaintiff's complaint; that he did not retaliate against or harass plaintiff in any way; and that defendant Schwarz never instructed Ellis to retaliate against or harass plaintiff. (Doc. 108, Ex. E, Ellis Decl. ¶¶ 2, 3). Plaintiff did not file grievances regarding the alleged retaliatory cell move. (Doc. 108, Ex. C). This concludes the factual record concerning plaintiff's claims.

Legal Conclusions

A.    Plaintiff's Claims For Injunctive Relief Are Moot

Plaintiff seeks, among other relief, an injunction commanding the DOC to take the following actions as a result of its alleged violation of the ADA:

(1)    return the Magnum boots to plaintiff,

(2)    establish a rule prohibiting the confiscation of a disabled inmate's health care aid upon the inmate's arrival at a new facility,

(3)     establish a procedure requiring that all handicapped "new arrival inmates" be seen by the receiving institution's Impaired Coordinator within seven days,

(4)     establish a rule prohibiting the housing of handicapped inmates on close management when such housing would hinder the inmate's access to essential aids or would exclude the inmate from a service, program, or activity,

(5)     require mandatory training of close management officers "on the proper restraints to be used condusive [sic] to disability on out of cell, call-outs, and transport,"

(6)     equip outdoor exercise areas with "strengthening equipment for the handicap as to maintain muscle tone due to inability to use dip and pull-up bars,"

(7)     establish a rule prohibiting medical personnel "from tak[ing] valid medical passes of handicap inmate to suit institutional and/or close management requirement" and

(8)     implement a "no tolerance rule of accountability to deter present and future non-medical personnel from intentional [sic] depriving of medical necessary aides for the handicap inmate."

(Doc. 61, pp. 21-22).  Defendants assert that plaintiff lacks an Article III case or controversy to seek injunctive relief against the DOC, because plaintiff is no longer in the DOC's custody.  (Doc. 106, pp. 11-12).

"Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of 'Cases' and 'Controversies.'" *Soliman v. U.S. ex rel. INS*,, 296 F.3d 1237, 1242 (11th Cir. 2002) (*quoting* U.S. Const. art III, § 2).  "The doctrine of mootness derives directly from the case-or-controversy limitation, because 'an action that is moot cannot be characterized as an active case or controversy.'" *Soliman* at

1242 (*quoting Adler v. Duval Cnty. Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997)).

"If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed." *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001). "The general rule in our circuit is that a transfer or a release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief." *Smith v. Allen*, 502 F.3d 1255, 1267 (11th Cir. 2007), *abrogated on other grounds by Sossamon v. Texas*, — U.S. —, 131 S. Ct. 1651, 179 L. Ed. 2d 700 (2011). "The reason for this rule is that injunctive relief is 'a prospective remedy, intended to prevent future injuries,' *Adler*, 112 F.3d at 1477, and, as a result, once the prisoner has been released, the court lacks the ability to grant injunctive relief and correct the conditions of which the prisoner complained." *Smith* at 1267 (citations omitted); *see also Siegel v. Lapore*, 234 F.3d 1163, 1172-73 (11th Cir. 2000) ("A claim for injunctive relief may become moot if: (1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.") (*quoting Reich v. Occupational Safety & Health Review Comm'n*, 102 F.3d 1200, 1201 (11th Cir. 1997)).

The record establishes that plaintiff was released from the DOC's custody on October 30, 2013. (Doc. 99, p. 4 ¶ 4; Doc. 102). The chance of a repeated injury due to plaintiff's new violation of a criminal law, plaintiff's criminal prosecution, conviction and sentence to a term of imprisonment, and plaintiff's subsequent institutional conduct warranting placement in close management segregation, is too speculative. *See Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (dismissing

as moot inmate's claim for injunctive relief relating to  conditions of confinement at county jail, where inmate had been transferred from jail to prison and chance of repeated injury due to the inmate's return to county jail  was too speculative); *Zatler v. Wainwright*, 802 F.2d 397, 399 (11th Cir. 1986) (inmate's release from prison mooted claim for declaratory and injunctive relief against head of prison).  As there is no reasonable expectation the alleged injury to plaintiff will recur, plaintiff's claims for injunctive relief are moot, and defendants are entitled to summary judgment on those claims.

    B.    <u>Plaintiff's Claims For Compensatory and Punitive Damages Are Barred By 42 U.S.C. § 1997e(e)</u>

       Plaintiff seeks compensatory and punitive damages for the DOC's alleged violation of the ADA (denying him participation in the outdoor exercise program for inmates held in close management and refusing a reasonable accommodation) and Schwarz's and Ellis' alleged retaliation in violation of the First Amendment (removing plaintiff from the handicap cell and confiscating his personal property). (Doc. 61, p. 23).  The Prison Litigation Reform Act ("PLRA") provides, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  "[T]he phrase 'Federal civil action' means all federal claims, including constitutional claims."  *Napier v. Preslicka*, 314 F.3d 528, 532 (11th Cir. 2002).  Although § 1997e(e) does not define physical injury, the Eleventh Circuit has concluded that, to satisfy the statute, "the physical injury must be more than *de minimis*, but need not be significant."  *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999), *vacated, in part, on other grounds*, 216 F.3d 970 (11th Cir. 2000) (en banc) (concluding that a "dry shave" was not the

kind of physical injury cognizable under § 1997e(e)); *see also e.g., Quinlan v. Pers. Transp. Servs Co.*, 329 F. App'x 246, 249 (11th Cir. June 5, 2009) (concluding that temporary chest pain, headache, difficulty breathing and periodic episodes of back pain, none of which required immediate medical attention or evidenced physical injury besides discomfort, did not surmount § 1997e(e)'s bar).

This action, brought by plaintiff under 42 U.S.C. § 1983 and the ADA, is a "Federal civil action" for purposes of § 1997e(e).   Plaintiff was a prisoner at the time he filed this action, and the harm of which plaintiff complains occurred while plaintiff was in custody.   Plaintiff seeks compensatory and punitive damages either for the mental and emotional injury he suffered as a result of defendants' conduct, or for the alleged violations of his federal rights divorced from any mental or emotional injury defendants caused.   The only physical injury plaintiff alleges – in his unsworn and unverified complaint – is that he suffered increased muscle atrophy, foot drop and pain.   The undisputed evidence in the summary judgment record completely refutes this and demonstrates that plaintiff did not suffer any physical injury – increased muscle atrophy, foot drop, pain, or other  injury – due to the events at issue in this lawsuit.   As plaintiff did not suffer any physical injury as a result of defendants' conduct, much less physical injury that is more than *de minimis*, he cannot recover compensatory or punitive damages on any claim.

C.   <u>Plaintiff Cannot Recover Any Damages (Even Nominal Ones) Against The DOC On His ADA Claim, Because The Eleventh Amendment Bars His Claim For Damages And Because Defendants Did Not Violate Plaintiff's Rights Under Title II Of The ADA</u>

Plaintiff's fifth amended complaint can be liberally construed as requesting nominal damages against the DOC for its alleged violation of the ADA.   Plaintiff

claims the confiscation of his Magnum boots and walking cane denied him the benefits of, and participation in, outdoor exercise offered by the DOC for inmates housed in close management. (Doc. 61, p. 20). Title II of the ADA applies to prisoners in state correctional facilities. *See* 42 U.S.C. § 12132; *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210, 118 S. Ct. 1952, 1954-55, 141 L. Ed. 2d 215 (1998).

The Eleventh Amendment prohibits a damages action by a private individual against a state (or state agency) in federal court, absent waiver or express congressional abrogation. *Fed. Maritime Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 765-66, 122 S. Ct. 1864, 152 L. Ed. 2d 962 (2002); *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). As the Eleventh Circuit explained recently in the context of a prisoner's ADA claim against the State of Georgia and the Georgia Department of Corrections:

> A state is not immune where Congress has (1) unequivocally expressed its intent to abrogate the states' immunity through a clear legislative statement, and (2) acted pursuant to a valid grant of constitutional authority. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 72-73, 80, 120 S. Ct. 631, 640, 145 L. Ed. 2d 522 (2000) (citations omitted). The ADA states that "[a] State shall not be immune under the [E]leventh [A]mendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter." 42 U.S.C. § 12202. The Supreme Court has held that because the Fourteenth Amendment grants Congress the power to enforce its provisions, Title II of the ADA validly abrogates state sovereign immunity to the extent that it creates a cause of action for damages against states for conduct that violates the Fourteenth Amendment. *United States v. Georgia*, 546 U.S. 151, 158-59, 126 S. Ct. 877, 881-82, 163 L. Ed. 2d 650 (2006).

*Redding v. Georgia*, 557 F. App'x 840, 844 (11th Cir. Feb. 18, 2014). Thus, unless plaintiff establishes that the conduct underlying his ADA claim also violated his

constitutional rights, he is barred by the Eleventh Amendment from recovering money damages against the DOC on his ADA claim.

This court determined previously that the conduct underlying plaintiff's present ADA claim did not violate plaintiff's constitutional rights.  (*See* Docs. 35, 51 (concluding that plaintiff's medical deliberate indifference claims against individual DOC employees who denied plaintiff his Magnum boots and walking cane and replaced the Magnum boots with different boots – failed to state a constitutional violation)).  Because plaintiff has not shown  the defendants' conduct violated his constitutional rights, the Eleventh Amendment precludes his recovery of any money damages on his ADA claim.  *See, e.g., Redding*, 557 F. App'x at 845 (holding that state prison officials were entitled to Eleventh Amendment immunity from suit arising out of assignment of disabled prisoner to top bunk in alleged violation of the ADA, where prisoner's allegations did not show the defendants' conduct violated the prisoner's constitutional rights).

Even if the court considered the issue anew in light of defendants' summary judgment materials, the evidence  confirms that the defendants were not deliberately indifferent to plaintiff's federally protected rights.  The evidence further demonstrates that plaintiff was not denied the benefits of the DOC's outdoor exercise program.

To establish a claim of deliberate indifference, the plaintiff must prove "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1158 (11th Cir. 2010) (alteration in original).  In other words, a plaintiff must demonstrate that the defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and drew the inference.

*Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003) (quotation omitted).  "[A] simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment" does not support a claim of deliberate indifference. *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991). Moreover, matters of medical judgment do not constitute deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 107, 97 S. Ct. 285, 292-93, 50 L. Ed. 2d 251 (1976).

To state a *prima facie* case of disability discrimination under Title II, a plaintiff must prove

> (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.

*Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007) (*citing Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001)).

After plaintiff's Magnum boots and cane were confiscated upon his arrival at Santa Rosa CI (boots which plaintiff had complained did not fit him properly and had demanded replacement, and which Dr. McClunney had ordered replaced with different boots), the DOC offered plaintiff an alternative accommodation in accordance with medical practitioners' recommendations – different boots wide enough to accommodate plaintiff's brace.  Plaintiff has not shown how or why the alternative prescribed boots were inadequate.  Plaintiff's disagreement with that course of treatment is not sufficient to establish deliberate indifference or that the accommodation was unreasonable.  With regard to the cane, ARNP Nichols did not issue plaintiff a pass for a walking cane because she observed plaintiff was "steady on feet" without use of a cane (Nichols observed plaintiff walk in flip-flops without

therapeutic boots). Plaintiff had the opportunity for outdoor exercise, but refused, independently, when outdoor exercise was offered. Plaintiff refused outdoor exercise even after receiving (on November 22, 2007) the new therapeutic boots Dr. McClunney had ordered – boots which plaintiff admitted fit him well. (Doc. 108, Ex. G, pp. 21-24). In light of this evidence, a reasonable jury could not conclude that the DOC denied plaintiff access to outdoor exercise. Defendants are entitled to summary judgment on plaintiff's ADA claim.

> D.   <u>Defendants Did Not Retaliate Against Plaintiff In Violation Of His First Amendment Rights</u>

Plaintiff claims defendants Schwarz and Ellis "demonstrated intentional retaliation" for plaintiff's filing grievances, when Schwarz threatened plaintiff, moved him from a handicap cell to a standard cell, and ordered Ellis to confiscate plaintiff's personal property. Plaintiff claims Ellis carried out Schwarz's command by confiscating and threatening to destroy some of plaintiff's photographs. (Doc. 61, pp. 17-18, 20-21). The First Amendment prohibits a prison official from retaliating against an inmate for exercising his free speech rights, including the right to complain about the conditions of confinement and to file prison grievances. *Farrow v. West*, 320 at 1248. "An inmate may maintain a cause of action for retaliation under 42 U.S.C. § 1983 by showing that a prison official's actions were the result of the inmate's having filed a grievance concerning the conditions of his imprisonment." *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011) (quotation marks and brackets omitted). A First Amendment retaliation claim requires an inmate to prove that "(1) he engaged in constitutionally protected conduct; (2) the defendant's retaliatory act adversely affected the protected conduct; and (3) there is a causal connection between the retaliatory act and the adverse effect on the conduct." *Smith*

*v. Fla. Dep't of Corr.*, 713 F.3d 1059, 1063 (11th Cir. 2013) (*citing Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005)).  To establish causation, the plaintiff must show that the defendant was "subjectively motivated to discipline" the plaintiff for exercising his First Amendment rights.  *Smith v. Mosley*, 532 F.3d 1270, 1278 (11th Cir. 2008).

Defendant Schwarz's affidavit, submitted in support of his motion for summary judgment, states that at the time he moved plaintiff, he had no knowledge of plaintiff's grievances concerning his therapeutic boots and walking cane.  (Doc. 108, Ex. D, Schwarz Decl. ¶ 3).  Defendant Schwarz further states that he did not verbally threaten plaintiff, did not retaliate against him in any way, and did not instruct anyone else to retaliate against plaintiff.  (*Id*. ¶ 2).  Similarly, defendant Ellis' affidavit states that he had no contemporaneous knowledge of the grievances plaintiff had filed; that he did not retaliate against or harass plaintiff in any way; and that defendant Schwarz never instructed Ellis to retaliate against or harass plaintiff.  (Doc. 108, Ex. E, Ellis Decl. ¶¶ 2, 3).  By failing to contest defendants' affidavits or to provide any evidence in support of his general, unsworn assertion of retaliation, plaintiff has not raised a genuine issue of material fact as to whether defendants Schwarz and Ellis knew of plaintiff's medical grievances (and thus were subjectively motivated to discipline plaintiff for filing them).  As plaintiff cannot establish the requisite causation, defendants are entitled to summary judgment on plaintiff's First Amendment retaliation claim.

Accordingly, it is ORDERED:

The clerk shall correct the docket to reflect that defendant "Swartz" is defendant "John Schwarz."

And it is respectfully RECOMMENDED:

1.  That defendants' motion for summary judgment (doc. 106) be GRANTED.

2.  That the clerk be directed to close the file.

At Pensacola, Florida this 15th day of July, 2014.


/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**



NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).